BURTON *et al. v.* KINNEY *et al.*

(*Jackson*, April Term, 1950.)

Opinion filed June 9, 1950.

BOND & HAYWOOD and GRAY & GRAY, of Brownsville, for complainants.

CARUTHERS EWING and H. W. LAUGHLIN, JR., both of Memphis, and A. M. CARLTON, of Brownsville, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This appeal involves the construction of the last will and testament of William Kinney who died in Haywood County in October, 1940. He left the following holographic will by which he disposed of a very large estate consisting of both real and personal property:
"Last Will & Testament of William Kinney.

"December 10, 1934.

"I devise to my beloved wife, Marie Kinney, all of my property of every kind for her lifetime.

"I devise the remainder interest in said property in equal moities to my heirs and her heirs.

"I nominate my wife executrix of this will and request that her bond and oath be waived.

"Wm. Kinney."

The testator left surviving him, his widow, Mrs. Marie Kinney, no children being born of the said union, no parents, a large number of heirs, descendants of his

brothers and sisters. All parties in interest are made parties to this cause either as complainants or defendants or by representation.

The cause was heard by the Chancellor upon the pleadings and an agreed statement of facts. He decreed that the estates in remainder both as to William Kinney's heirs and the heirs of Mrs. Marie Kinney were contingent, and that the property both real and personal passed under the Statutes of Descent, Williams' Code, Section 8380 et seq. The complainants excepted and were granted an appeal to this Court.

The errors assigned complain of the holding of the Chancellor as above stated. To be specific, the contention is made by assignment (1) that it was error to hold that "those persons who would constitute the heirs of William Kinney *living at the date of the death of his widow*, the life tenant, would take a one-half remainder interest."

Assignment (2), "It was error to hold that those persons who would constitute the heirs of Mrs. Kinney *living at her death* would take a one-half remainder interest in the property devised to them." Under the third assignment it is insisted that since the property consisted of both real and personal property, it was error to hold "that it would pass and be controlled by the Statutes of Descent."

It appears that counsel for one group of remaindermen say that the remainder interest, as to both the heirs of Mr. and Mrs. Kinney is vested, and that the Court should sustain the above assignments of error. Counsel for another group say the Chancellor's decree is correct and should be affirmed. Still another group contends that the remainder devised to the heirs of Mrs.

Kinney is contingent and that Mr. Kinney's heirs take a vested remainder in one-half of his estate.

■■ It is a settled rule of construction of wills that the intention of the testator is absolutely controlling so long as that intention is not in conflict with some positive rule of law. In deciding the question of intention we must look to the entire will and the language used by the testator in expressing his intention. As we approach the task before us we are constantly reminded of the words of Lord Coke in *Roberts* v. *Roberts*, 1614, 2 Bulst. 124, 130, "wills and the construction of them do more perplex a man than any other learning." More than a century ago Judge Story said in *Sisson* v. *Seabury*, 1832, 22 Fed. Cas. pp. 238, 239, No. 12,913, 1 Sumn. 235, "The cases almost overwhelm us at every step of our progress; and any attempts . . . to classify them, much less to harmonize them, is full of the most perilous labor."

■■ Precedents are of little aid in deciding cases involving the testator's intention. In Rood on Wills, (2d) Ed., Section 413, it is said: "If by the use of plain and unambiguous language, he has made his meaning clear and certain, his will expounds itself, and all the court can do is to give it effect. *All doubts must be resolved in favor of his having meant just what he said.* The courts have no right in such cases to resort to a fanciful or conjectural construction, grounded on the circumstances of his property, his family, or himself." (Emphasis supplied.)

Counsel for complainants argue with much zeal that the testator could not have intended to favor one group of heirs over another and that all remainders should be decreed as vested rather than contingent in cases of

6

doubt. While it is true that his general intent was to divide his estate equally, one-half to his wife's heirs and one-half to his own heirs, the principle of equality is not violated whether the remainder be adjudged vested or contingent. Moreover if the legal effect of the language of the will results in one group of heirs taking a contingent and another group a vested remainder the difference in equality, if there should be any, would not be so great as to justify the Court in holding that he did not mean what he said in the use of technical words. The expressed intent can never be varied under the guise of correction because the testator misapprehended the legal effect of the provision he made. That would not be construing the testator's will but making another.

We cannot overlook the fact that Mr. Kinney, being the able lawyer that he was, knew the meaning of the word "heirs" and the legal effect of its use, that is that a living person has no heirs, that his "wife's heirs" could not and would not be determined until her death.

In 23 R. C. L., Section 95, page 551, it is said: "A remainder to the heirs of the life tenant is generally a contingent remainder, for, there being no heirs to a living person, until the termination of the life estate no one can claim as the heir of the life tenant." To the same effect Thompson on Real Property, Vol. 4, Section 2214, says: "We have said that every remainder requires a particular estate to support it, and that a contingent remainder must vest during the continuance of the particular estate, or *eo instante* that it determines. Unless a contingent remainder becomes vested on or before the determination of the preceding vested estate, it can never come into possession, it has perished." The

rule of law thus stated is supported by the great weight of authority.

Able counsel for the complainants point to no fact or circumstance that would tend to show that the testator did not use the word "heirs" otherwise than in a technical sense. The Court is well warranted in holding that where a lawyer writes his own will and uses technical words in declaring his intention they must be given a technical meaning. *Third National Bank in Nashville* v. *Noel et al.*, 183 Tenn. 349, 192 S. W. (2d) 825. Contention is made, *arguendo*, that the testator intended to devise a vested remainder because of the possibility that Mrs. Kinney might have heirs born after the termination of her life estate and he could not have had such persons in mind when he wrote his will. Such a possibility, and even if it were a probability, is too remote to warrant the Court in thus construing the will. In order to avoid such an eventuality he could have very well stated that the remainder interest was devised to such heirs of his wife as were living at his death. Moreover the rule of law which favors the vesting of estates in remainder cannot be considered except where the devise is so ambiguous as to justify us in holding that the testator in using technical language did not mean what he said. Counsel for complainants have cited many of our cases, and attempted to distinguish them from the will now before us.

In *Forrest* v. *Porch,* 100 Tenn. 391, 392, 45 S. W. 676, the will provided that "at her death (the life tenant) the said land is to be divided between my heirs at law." It was held: "The remainder was contingent, because the testator obviously intended the land to be divided at the death of his widow among such persons as should then sustain to him the relation of heirs at law."

In *Rinks* v. *Gordon*, 160 Tenn. 345, 24 S. W. (2d) 896, the will provided a life estate to Carrie T. Webster and remainder to certain persons (naming them) "share and share alike to them or their heirs, *who may be living at the time of my sister Carrie T. Webster's death.*" (Emphasis supplied.)

In *Taylor* v. *Dickerson*, 167 Tenn. 121, 67 S. W. (2d) 137, there was a devise to Martin Taylor "during his natural life, then to go to my heirs equally, or their heirs or assigns." There the Court followed *Forrest* v. *Porch*, *supra*, and held that the testator by using the words "or assigns" devised a vested remainder. It was there said: "The words 'or assigns' import a taking or vesting of title which might be assigned or conveyed in the lifetime of the life tenant, and such intention is altogether inconsistent with an intention to postpone the vesting of title until the death of the life tenant."

The above cases were discussed in *Felts* v. *Felts*, 188 Tenn. 404, 219 S. W. (2d) 903, 904, GAILOR, J., and there held that the will creating successive life estates (1) in the wife and (2) in two daughters in succession, and "*then my Estate shall be divided Equally between my lawful heirs*", the remaindermen were ascertained upon the death of the last in possession of the particular estate. The "lawful heirs" of the testator consisted of those who were in *esse* at the death of the last life tenant, not those who survived the testator. The estate in remainder was necessarily contingent in these circumstances.

The learned Chancellor held that the remainder to the heirs of the testator was also contingent, as was the remainder to the heirs of Mrs. Kinney, based upon *Forrest* v. *Porch*, *supra*, and as construed in *Taylor* v. *Dickerson*, *supra*. To this we are unable to give our

assent. By reference to the second clause of William Kinney's will it will be seen that there is not even a suggestion that Mrs. Kinney's heirs are to be determined as of the day of his, testator's, death. Nor is there an intimation therein that his heirs are to be determined at any time except at his death. In *Forrest* v. *Porch, supra,* the testator clearly, and without equivocation, declared that those persons should take a remainder interest who "sustained to him the relation of heirs at law" *at the death of the life tenant.* If the testator in the case at bar did not fix a time at which his heirs as remaindermen were to be determined we cannot do it for him under the guise of judicial interpretation. That would amount to revising the will or writing another will for him. While remaindermen, who are the lawful heirs of the testator, are sometimes referred to as "reversioners", we consider it wholly unnecessary to make any distinction since it could have no possible bearing upon the intention of the testator. It is true that in the construction of wills the courts have often found that the testator in using the word "heirs" referred to "children" of a named person, ignoring the rule in Shelly's case, and especially where, as in Tennessee, that rule is abolished by statute. But in the case at bar it cannot be said that the testator used the word to mean anything except in a legal sense, that is, that one-half of his entire estate, real and personal, upon the death of Mrs. Kinney, should pass to her heirs *per stirpes,* according to the Statutes of Descent, and that one-half of his said estate passed to his heirs *per stirpes* immediately upon his death under the same statute. *Forrest* v. *Porch, supra.*

The action of the Chancellor in decreeing that the heirs of the testator took a contingent remainder under the

will is reversed. In all other respects it is affirmed. We think this is a case in which the costs should be taxed against the estate of the decedent, and it is so ordered. The cause is remanded for such further orders consistent with this opinion and which may be necessary though incident to a final decree.

All concur.